UNITED STATES of America, Appellee,

v.

**Ronnie Alfredo VIGIL, Appellant.**

UNITED STATES of America, Appellee

v.

**Bennie James BACA, Appellant.**

**Nos. 77–1828, 77–2016.**

United States Court of Appeals,
Ninth Circuit.

Sept. 28, 1977.

Dale Danneman, Asst. U. S. Atty., Michael D. Hawkins, U. S. Atty., Tucson, Ariz., argued for appellant.

Bernardo P. Velasco, Asst. Federal Public Defender, Tucson, Ariz., argued for appellee.

Before MERRILL and GOODWIN, Circuit Judges, and NIELSEN,* District Judge.

PER CURIAM:

Ronnie Vigil and Bennie Baca were indicted for importing heroin from Mexico and for knowingly and intentionally possessing heroin with intent to distribute. The jury found them not guilty of importation but found Vigil guilty of possession with intent to distribute and Baca guilty of the lesser included offense of simple possession. On appeal each challenges the trial court's denial of Baca's motion for a severed trial. Both also assert that prejudice resulted from Baca's attempt to have Vigil testify on Baca's behalf.

When Vigil crossed the border from Nogales, Sonora, to Nogales, Arizona, the customs inspector discovered that he was carrying $1,280 in cash and five .38 caliber bullets. A strip-search from the waist up revealed fresh needle tracks on Vigil's arm. The inspector notified the appropriate officers and Vigil was followed. Vigil met Baca and Frank Chavez, and eventually the three drove north from Nogales in a car. After following the car for twenty miles, the officers stopped it. While getting out, Vigil dropped three marijuana cigarettes. In a search that followed the stop, the officers found heroin under the back seat. At the time of the stop Baca was driving, Chavez was in the front seat, and Vigil was alone in the back.

Baca's defense was that he did not know of the heroin's presence and was not even very well acquainted with Vigil. Chavez, who was not charged, corroborated Baca's story. Baca also desired Vigil's corroboration. Baca therefore moved to have his trial severed from Vigil's and postponed until after Vigil had been tried. Baca thought Vigil could testify without fear of

self-incrimination and would not assert his Fifth Amendment privilege. The trial court denied the motion to sever.

A motion to sever is addressed to the trial court's discretion, and a defendant has a heavy burden in showing that the trial court abused its discretion. *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976); *United States v. Camacho*, 528 F.2d 464, 470 (9th Cir.), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976); *United States v. Campanale*, 518 F.2d 352, 359 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 423 L.Ed.2d 638 (1976); *United States v. Thomas*, 453 F.2d 141 (9th Cir. 1971), *cert. denied*, 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972).

When the reason for severance is the asserted need for a codefendant's testimony, the defendant must show that he would call the codefendant at a severed trial, that the codefendant would in fact testify, and that the testimony would be favorable to the moving defendant. *United States v. Wood*, 550 F.2d 435 (9th Cir. 1976); *United States v. Coplen*, 541 F.2d 211 (9th Cir. 1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 791 (1977); *United States v. Cruz*, 536 F.2d 1264 (9th Cir. 1976); *United States v. Larios-Montes*, 500 F.2d 941 (9th Cir. 1974), *cert. denied*, 422 U.S. 1057, 95 S.Ct. 2681, 45 L.Ed.2d 709 (1975); *United States v. Ellsworth*, 481 F.2d 864 (9th Cir. 1973), *cert. denied*, 414 U.S. 1041, 94 S.Ct. 544, 38 L.Ed.2d 332 (1974); *United States v. Bumatay*, 480 F.2d 1012 (9th Cir. 1973).

In an affidavit filed with his motion to sever, Baca's counsel swore that he intended to call Vigil at trial. He also swore that he had learned from Vigil's counsel that Vigil would say, if he testified, that Baca had no interest in the heroin or knowledge of its presence. At the hearing on the motion to sever, Baca's counsel, in the presence of Vigil's counsel, stated that Vigil would be willing to testify at a separate trial but that it would be impossible to compel him to do so at a joint trial.[1]

---

* The Honorable Leland C. Nielsen, United States District Judge for the Southern District of California, sitting by designation.

1. One may question whether Baca's counsel's statement that Vigil's counsel had told him Vigil would be willing to testify, without more, constituted a sufficient showing that Vigil

While the trial court recognized the potential value of Vigil's testimony to Baca, it denied the motion to sever, apparently on the ground that Vigil might, after all, decide to testify at a joint trial.[2]

At the trial, when Vigil's counsel told the court that Vigil in fact would not testify, Baca's counsel renewed his motion for a severance. The court denied that motion and told Baca's counsel to put Vigil on the stand and take his chances. In the presence of the jury, Baca's counsel then called Vigil. Vigil's counsel responded that Vigil was relying on his right not to testify. Vigil did not actually take the stand.

■ The importance of Vigil's testimony to Baca's case is obvious; the trial court clearly recognized it. Vigil did not seriously dispute his possession of the heroin, though he did insist that he had it solely for his own use. If Vigil had testified that the heroin was his alone, this testimony very possibly would have led the jury to acquit Baca entirely. Baca's defense clearly was prejudiced by the court's refusal to grant separate trials.

Balanced against the manifest prejudice to Baca is the trial court's hypothesis that Vigil's sense of justice might motivate him to help Baca despite the damage his testimony would do to his own case.[3] To require a defendant to rely solely on a codefendant's sense of justice when the codefendant's liberty is at hazard is to ignore the facts of life. The trial court's exercise of its discretion in this case came from a commendable desire to save time. But the court abused its discretion in refusing to

sever the trials upon the reliable representation that Vigil would testify for Baca if the trials were severed.

The abuse of discretion was compounded when the court forced Baca to call Vigil as a witness, thus forcing Vigil, in front of the jury, to assert his privilege not to testify. This error requires reversal of Vigil's conviction.

■ Baca had no right to call Vigil nor to have the jury hear Vigil's refusal to testify. *United States v. Roberts*, 503 F.2d 598 (9th Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975); *United States v. Beye*, 445 F.2d 1037 (9th Cir. 1971).

We need not now decide whether one defendant's attempt to call a codefendant to the stand must always result in a reversal of the codefendant's conviction. The situation here involved a virtual order by the court to Baca's counsel to call Vigil. When Baca's counsel renewed his motion for a severance at the end of the government's case and sought to make an offer of proof of Vigil's willingness to testify and of the nature of his testimony, the court refused. Instead, the judge told Baca's counsel, "You put him on the stand and take your chances, as they say, one way or the other." The court thus told Baca's counsel to do something which, under our decisions, counsel had no right to do. This judicially provoked error would require the reversal of Vigil's conviction even if there were no potential impairment of Vigil's Fifth Amendment rights.

would testify at a separate trial. We recently noted in *United States v. Wood*, 550 F.2d 435 (9th Cir. 1976), that the silent presence of the codefendant's counsel is not probative. In *Wood*, the trial court offered counsel an opportunity for further proof and clearly considered the factors we have held relevant. Here, in contrast, the trial court expressed no doubt about the defendant's showing of any of the relevant factors. The court was apparently satisfied by counsel's representations, but denied the severance on the ground that Vigil might possibly change his mind and testify at a joint trial. When Baca's counsel renewed his motion during the trial, he suggested calling Vigil to the stand to state his willingness to testify in a severed trial and the substance of

his testimony, but the court refused this offer of proof. Even if Baca's first showing had been insufficient, therefore, the later suggestion of a firm offer of proof placed the trial court in an untenable position.

2. "THE COURT: Well, he might not claim it, he might be so concerned about the injustice that he would get on the stand and tell all of this."

3. It is the practice of some district courts to interrogate the codefendant out of the presence of the jury in order to ascertain whether he actually would claim his Fifth Amendment privilege.

Because there must be a new trial we have also examined the assertion that the search and seizure were constitutionally impermissible. Vigil's activities, including but not necessarily limited to those we have described, created a founded suspicion justifying a stop. When Vigil dropped three marijuana cigarettes the officers had probable cause to search the vehicle for other contraband.

Reversed and remanded.